IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ANANDA CAMARGO CHAVEZ,<br>   *Plaintiff,*<br><br>v.<br><br>REBUILT BROKERAGE LLC d/b/a<br>REBUILT REALTY AND REBUILT<br>OFFERS LLC<br>   *Defendant.*<br>_____/ | §<br>§<br>§<br>§<br>§   Case No. 1:24-cv-504-RP<br>§<br>§<br>§<br>§ |

**MOTION AND BRIEF IN SUPPORT OF MOTION
TO DESIGNATE EXPERT OUT-OF-TIME**

**INTRODUCTION**

In order to prove the classwide claims and seek class certification in this putative nationwide class action against the Defendants, the Plaintiff needed classwide telephone texting records. Plaintiff planned to analyze them, among other things, for numbers on the Do Not Call Registry and to determine what if any numbers consented or opted out. The Plaintiff requested these records in discovery. Defendant could not provide them. As outlined in the Plaintiff's Motion for Spoliation Sanctions related to those records, ECF No. 23, MessageMedia, the Defendant's texting provider, was in the process on recovering responsive message records from backup storage and required engineers to retrieve that data. MessageMedia made its production on January 22, 2025, after the parties' time to designate experts on January 10, 2025 had passed. (Exhibit A). Plaintiff now seeks leave to designate Aaron Woolfson as a testifying expert pursuant to Rule 26(a)(2)(A) to provide testimony on MessageMedia's data and production, out-of-time, because of the late timing of MessageMedia's production, which establishes good cause.

1

**BACKGROUND**

Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019). "In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two Classes under the TCPA).

In this lawsuit, Ms. Chavez has alleged that Defendants sent multiple text messages to her cell phone. Those messages violated the TCPA because her number is on the National Do Not Call Registry. Due to the *en masse* nature of telemarketing, the Plaintiff has filed this matter on behalf of the following putative class:

> **National Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message from or on behalf

of a Rebuilt entity, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Thus, to prove her claims and secure class certification, the Plaintiff requires analysis of the MessageMedia production, which will establish which numbers were on the Do Not Call Registry, as well as which numbers may have received text messages after they opted out. However, as will be explained, the MessageMedia production was produced in a "TSV" database format, and requires database analysis to interpret and analyze. Plaintiff desires to use the expert she intends to designate Aaron Woolfson, to conduct this analysis. Though this analysis may sometimes be readily conducted without need for an expert, such as when the calling records themselves indicate on their face whether a number is on the Do Not Call Registry, the records here are not only comprised of raw data but came in a special database format in the form of a "TSV" file.

Accordingly, until the records were produced, the Plaintiff did not know what the records contained, the extent to which the production would be useful, or if they would even require expert analysis. Here, expert analysis of the MessageMedia production is required to ascertain not only what numbers Defendants texted while they were on the Do Not Call Registry, but also to ascertain whether any customers revoked their consent or whether the records reflect the defense of consent as an initial matter.

The parties exchanged a meet and confer email on February 3, 2025, requesting consent to designate an expert out-of-time, which the Defendants rejected. Counsel for Plaintiff, Andrew Perrong, then called Jacob Bach, counsel for the Defendant, for a telephonic meet and confer on February 7, 2025, and Mr. Bach flatly stated that Defendants would not reconsider their position. The parties are therefore at an impasse with the above request.

## STANDARD

Consistent with the Federal Rules of Civil Procedure, the Fifth Circuit held that a late disclosure of an expert may result in the suppression of that expert's testimony "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 26(a)(2). In determining whether to exclude expert testimony as untimely designated, a court applies a standard akin to that of "good cause," analyzing factors which include "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). The late production of evidence, particularly when such production is the fault of the non-designating party or due to factors outside the designating party's control, is the quintessential example of a situation justifying an out-of-time expert designation. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 374 (5th Cir. 2016).

## ARGUMENT

1. **Designating an expert out-of-time is warranted because of newly discovered evidence and because the Plaintiff has nevertheless established "good cause" to designate an expert out-of-time.**

As an initial matter, the evidence that the Plaintiff seeks to designate Mr. Woolfson to testify about–the MessageMedia production of the text messages the Defendants sent and received which potentially violated the TCPA with respect to the Class–was only recently discovered. Under FED. R. CIV. P. 26(e), the parties may supplement expert disclosures and reports to the extent that the previous disclosures are incorrect or incomplete. Although this rule cannot be used to merely shoehorn a new expert report out-of-time, *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 570 (5th Cir. 1996), Rule 26(e) can be appropriately used to provide a supplemental expert report when "it relies on newly disclosed theories or information." *Hoke v. Anderson*, No. 1:18-CV-00232-RP, 2019 WL 2128631, at *2

4

(W.D. Tex. May 15, 2019). Ultimately, whether such new theories or information are appropriate is determined based on the same four factors as the "good cause" standard the Fifth Circuit articulated in *Geiserman*: (1) the explanation for the failure to disclose the information earlier; (2) the importance of the testimony; (3) the prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Moore v. Hernandez*, No. 2:17-CV-00531-JRG, 2018 WL 2670403, at *1 (E.D. Tex. Mar. 6, 2018)

All four such requirements are met here. First, the Plaintiff did not disclose the information and seek an expert to analyze it earlier because the information was only produced *after* the deadline to designate experts had already passed. At a most basic and fundamental level, the Plaintiff was unable to secure an expert to analyze the data, nor, for that matter, able to determine that expert analysis of the data was warranted and thus seek an extension, because MessageMedia did not produce the principal data that the Plaintiff will use to prove her case until January 22, 2025, almost two weeks after the expert disclosure deadline had passed. It follows that, without production of the data that the Plaintiff sought and obtained, she could not determine whether expert analysis was warranted as an initial matter, or for that matter, find an expert willing to analyze data which was not even in Plaintiff's possession. It was only until *after* MessageMedia made its production that the Plaintiff was able to ascertain that expert analysis of the data would be required and that she found an expert willing and able to analyze the data in the format produced by MessageMedia.

On this point, it should be noted that, in some TCPA cases, expert analysis of classwide calling records is not always required, particularly when the calling records themselves indicate whether a number was on the Do Not Call Registry or scrubbed against it. Without seeing the calling records at issue here, the Plaintiff was not aware whether the records produced by

MessageMedia would even require expert analysis as an initial matter. Speaking from experience, the undersigned counsel has obtained records in other TCPA cases in readily-accessible formats, such as Excel spreadsheets, which are readily analyzed without expert assistance, sometimes including fields indicating whether the number was on the Do Not Call Registry when it was called or whether each call was scrubbed against an internal do not call list. Here, the MessageMedia production is comprised of the raw messages sent and received, and their contents, including STOP opt out requests. Moreover, MessageMedia has produced the production in a database format called a "TSV" file, which only certain individuals and experts can analyze, as specialized software is required to read such files.

As the Court explained in *Moore*:

Ultimately, the Court concludes that Plaintiff's explanation for supplementing Mr. Brady's report, albeit with untimely disclosed information, is reasonable. After all, it was DPS, not Plaintiff, who caused the timely requested documents to be produced late. Moreover, while Plaintiff could have, and should have, sought leave from the court to file a supplemental report upon receipt and review of the DPS materials, Plaintiff did move diligently at that point to provide these additional documents to Defendants and to supplement Mr. Brady's report. Thus, this factor weighs against striking the entirety of Mr. Brady's supplemental report.

*Moore*, 2018 WL 2670403, at *2.

Second, Mr. Woolfson's testimony on the MessageMedia production and its applicability to whether the Defendants texted telephone numbers on the Do Not Call Registry, in violation of the TCPA, is critical to this case, particularly at class certification. Mr. Woolfson will use his analysis of the MessageMedia data to establish whether any of the numbers were on the National Do Not Call Registry, how many times each number was texted, and whether the data demonstrates who may have consented to the calls and who may have received calls, despite asking that they stop. Courts around the country have certified TCPA Do Not Call Registry class actions of the type here, as here, based on the Defendant's telephone calling records and expert

analysis of them. *See, e.g.*, *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 935 (C.D. Ill. 2014) (refusing to strike government expert); *Mey v. Venture Data, LLC*, No. 5:14-CV-123, 2017 WL 10398569, at *3 (N.D.W. Va. June 6, 2017) (certifying class based on expert analysis of call record data and expert identification of telephone numbers); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299, at *6 (N.D. Cal. July 22, 2020) (certifying class and denying challenge to Plaintiff's expert's analysis of calling data); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 304 (N.D. Cal. 2017) (same).

Third, the prejudice to the Defendants is minimal, at best. Fact discovery in this matter has not concluded and is set to conclude in a month, on March 7, 2025. Thus, Defendants have lost less than a month in their ability to depose or otherwise secure a rebuttal expert, a position they are similarly situated in and which they would have been in regardless because of the extended time period for the MessageMedia production, since any challenge is likely to be to Mr. Woolfson's analysis, and not his qualifications or expertise. Thus, the direct prejudice stemming from the late disclosure of Mr. Woolfson as an expert, to the extent that he could have been disclosed in advance in any event, is *de minimis*. Moreover, Plaintiff moved to file this motion less than three weeks after MessageMedia's production and less than a business week after the Defendants have confirmed that they would not consent. *See Alleman v. Gorilla, Inc.*, No. 3:13CV614-LG-JCG, 2015 WL 11117839, at *1 (S.D. Miss. Mar. 27, 2015) (holding four month delay was not prejudicial so long as the late designated expert was deposed before the discovery cutoff).

Given that the Defendants continue to refuse to pay for MessageMedia's production or copies of it, Defendants were likely not going to use such production as an initial matter, and the Defendants themselves have evidently and consciously chosen not to secure an expert of their

7

own. Trial in this matter is still several months away, and the dispositive motion deadline is almost two months away. Defendants can and will have every opportunity to cross-examine and depose Mr. Woolfson. It should also be noted that, just as in *Moore*, "to the extent there is material prejudice to Defendants . . . such prejudice is, in part, of Defendants' own making. For example, Defendants produced no documents related to" the text messages they sent, the contents of those messages, or whether they were on the Do Not Call Registry, forcing the Plaintiff to propound discovery on a third party, which itself had to seek out the classwide calling records from backups. 2018 WL 2670403, at *3 (E.D. Tex. Mar. 6, 2018). What's more, and related to the second factor, the failure to grant a party the opportunity to present expert witness testimony on the elements of proof necessary to prove their case is prejudicial. *See United States v. Alexander*, 816 F.2d 164, 169 (5th Cir. 1987) (reversing exclusion of expert testimony as an abuse of discretion when such testimony was critical to a party's theory of its case-in-chief).

      Finally, to the extent that the Court is inclined, and to the extent that a continuance is necessary, a continuance is the "preferred means of dealing with a party's attempt to designate a witness out of time." *C.F. Bean L.L.C.*, 841 F.3d at 374. The Court may hold that it is appropriate to permit the Defendants additional time for leave to designate an opposing expert as well as providing additional deposition time of the Plaintiff's expert as a continuance that cures any prejudice, as opposed to the drastic remedy of wholesale exclusion. *Moore*, 2018 WL 2670403, at *3 (E.D. Tex. Mar. 6, 2018).

      As such, the Court should permit the designation of Mr. Woolfson as an expert on the MessageMedia production and its contents. Mr. Woolfson's *curriculum vitæ* and cases where he has been designated as an expert to testify is attached herein as Exhibit B.

## CONCLUSION

For the reasons stated herein, the Plaintiff's motion should be granted and the Plaintiff permitted to designate Mr. Woolfson out-of-time.

RESPECTFULLY SUBMITTED AND DATED this February 10, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF CONFERENCE

We hereby certify that we conferred with counsel for Defendants, regarding the subject of this motion, which is opposed. The parties exchanged a meet and confer email regarding this request, which included a telephone call on February 7, 2025 attended by Andrew Perrong for Plaintiff and Jacob Bach for the Defendants. An agreement could not be reached because the parties are at an impasse with respect to the subject matter of the motion.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*/s/ Anthony Paronich*
Anthony Paronich

## CERTIFICATE OF SERVICE

We hereby certify that on February 10, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*/s/ Anthony Paronich*
Anthony Paronich
