IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ANANDA CAMARGO CHAVEZ,<br>    *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 1:24-cv-504-RP |
| REBUILT BROKERAGE LLC d/b/a<br>REBUILT REALTY AND REBUILT<br>OFFERS LLC<br>    *Defendants.* | §<br>§<br>§<br>§ | |

_____/

**REPLY IN SUPPORT OF MOTION
TO DESIGNATE EXPERT OUT-OF-TIME**

Defendants' opposition to the Plaintiff's Motion to Designate Expert Out-of-Time does little to advance why this Court should not permit the Plaintiff to make a late expert designation or in the alternative argues that no expert is required. Plaintiff files this response to show why the Court should permit the late designation requested, especially because the Plaintiff seeks to move no other deadlines – in other words, the Plaintiff's designation of an expert will not slow the case down in any material way.

At bottom, Defendants' opposition boils down to the contention that the Plaintiff missed her deadline to designate an expert, grasps at straws to attempt to show that a third party's late production was somehow the Plaintiff's fault and seeks to punish the Plaintiff as a result. For this contention, it misapplies the applicable law and facts, makes red-herring arguments, and inappropriately chides the Plaintiff for allegedly applying the wrong standard without proposing an alternative. The Motion should be granted.

In sum, this dispute boils down to whether, under the applicable Fifth Circuit case law, including *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990) and *In re Complaint of C.F.*

1

*Bean L.L.C.*, 841 F.3d 365 (5th Cir. 2016), the Plaintiff has demonstrated good cause for her failure to designate an expert. Under the test articulated in *Geiserman*, it is readily apparent that the Plaintiff has done so, owing to the fact that the Plaintiff *did not know what MessageMedia would produce*, and thus whether an expert was even required. The Plaintiff has proposed to designate Mr. Woolfson as an expert to *analyze the records* produced by MessageMedia to ascertain which numbers were on the do not call list and other data which may be obtained from such production, not more. Defendant seems to want to impose a "reasonable expectation" standard on the Plaintiff, stating that the Plaintiff had "anticipated the use of an expert" and "let the deadline pass without taking any action." That statement is factually and legally incorrect.

Those standards do not appear in, and are not so much as elicited by, the Fifth Circuit's holdings. As an initial matter, and as explained in the Plaintiff's original motion, the Plaintiff could not have predicted the format or contents of MessageMedia's production. As such, the Plaintiff could not have, and in fact did not, seek to designate an expert until such production was made and the Plaintiff engaged with experts who would be able and willing to analyze the data. And though the Defendants claim that the Plaintiff has misapplied the law by relying on the standards articulated in *Geiserman* and *Bean*, they do not propose an alternative standard through which this Court can weigh this dispute. But failure to weigh this dispute against a corresponding alternative standard makes this Court's job all the more difficult and dooms Defendants' opposition.

That the Defendants fail to weigh is for good reason, because the unique circumstances here justify permission of an out-of-time designation, as the *Geiserman* factors are unquestionably met here. The application of existing law to novel circumstances does not mean that the Plaintiff has applied the wrong legal standard and, indeed, this case comes as close to

needing expert analysis to supplement the dispute as it gets. The spirit of the Fifth Circuit's guidance in *C.F. Bean* is that the "lion's share of its expert information" must be produced by the expert deadline. However, as the circumstances here make clear, apart from analysis of MessageMedia's production, *there is no need for any other expert analysis*, and thus no "lion's share" of expert information that was not produced. That makes this case rather unique, as the court in *C.F. Bean*, and this Court in general, is undoubtedly accustomed to the necessity of multiple experts in civil litigation, such as on damages, various medical experts, and mental health experts. *C.F. Bean's* message is clear: judicial economy can tolerate the late disclosure of a single, limited expert; it cannot tolerate disclosure of multiple experts opining on various matters.

Defendants rigidly interpret this standard to read that late designations of new experts are impermissible. Not only is that not the law, it's a contention that the Fifth Circuit rejected in *Geiserman*. Applying the spirit of the Fifth Circuit's guidance to disputes like the instant one, it becomes evident that the Plaintiff is not attempting to improperly shoehorn a late designation without cause. It is likewise evidence that the Plaintiff did not fail to deliver the "lion's share" of expert information. Rather, the Plaintiff has shown good cause for why newly-produced evidence has revealed the need for an expert, and the Plaintiff timely moved to obtain and designate one on the basis of that evidence. The Plaintiff has been unable to find circumstances analogous to those here, where the very necessity of a *sole* expert's report was necessitated by a non-produced and completely unknown late production *of a third party*. For that matter, the discovery of new evidence of information, even after trial, is a sufficient basis *for a new trial* or *relief from a judgment* so surely the production of new evidence requiring expert analysis is sufficient basis for the designation of an expert, even out-of-time. *Cf.* Fed. R. Civ. P. 59(a)(1)(A); 60(b)(2).

Even so, Defendants' contention that the Plaintiff has not articulated good cause is perplexing, because Defendants' motion is internally contradictory. For example, in Paragraph 4, the Defendants acknowledge that the Plaintiff could not have known if the data MessageMedia eventually produced even required expert analysis prior to its production, and thus that the need for an expert was not even clear but then fault the Plaintiff for failing to seek a prophylactic extension in Paragraphs 10 and 11.

The Defendants also claim that MessageMedia's production does not require expert analysis and that counsel for the Defendants was able to open MessageMedia's production and analyze it. Fair point. To the extent that the Court denies the Plaintiff's motion and the Plaintiff relies on non-expert, lay analysis of MessageMedia's production, including through other types of discovery and summaries permitted by the Federal Rules of Civil Procedure and Federal Rules of Evidence, the Defendants should be estopped from later arguing that expert analysis of that data is necessary, as that position would be contrary to the one advanced now. However, courts have recognized in TCPA cases that expert analysis of this data is permissible. As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the proposed expert will determine which calls qualify for membership in the class in order to prepare this case for class certification.

Finally, the Defendants point to the red herring of consent for a further basis of denying the Plaintiff's motion, stemming at least partially into some issues with Mr. Woolfson's qualifications in analyzing the Defendants' theory of the case on the basis of the MessageMedia production. As an initial matter, analysis of an expert's qualifications is not one of the *Geiserman* factors, nor are they even properly considered by the Court at this stage, as those are more properly the subject of *Daubert* challenges, not those to designation, as here. But it also bears repeating that in a TCPA case, the issue of consent is an *affirmative defense* and the burden of proving consent as to each class member lies on the *Defendants*, not the Plaintiff. *See e.g. Callier v. Jascott Invs., LLC*, 2025 U.S. Dist. LEXIS 7316, *8 (W.D. Tex.) (Schydlower, J.) ("Express prior consent for calls is an affirmative defense on which [Defendants] bears the burden."). As such, Mr. Woolfson's analysis of the MessageMedia production is *not to analyze consent issues* as an initial matter. MessageMedia bears the burden of proving consent, and it has adduced *no evidence*, expert or otherwise, showing that any of the numbers contained in MessageMedia's production have consented. As such, because Mr. Woolfson isn't being designated as a consent expert, and because such expert is Defendants' burden in any event, Defendants' argument in this regard should also be disregarded. In any event, discovery has not yet closed and the Defendants will have a full opportunity to conduct expert discovery, and any prejudice against the Defendants can more than adequately be remediated.

Finally, the Defendants' contention that the Plaintiff is seeking to designate Mr. Woolfson as an expert on "TCPA claims itself" is misleading and an overly broad interpretation of Mr. Woolfson's expert role in this litigation, which is also pertinent to the prejudice the Plaintiff will suffer if not permitted to designate Mr. Woolfson. Mr. Woolfson has been retained and is seeking to be designated to *analyze the MessageMedia production only* to ascertain (1)

which numbers *in that production* were sent messages, despite their numbers being on the do not call registry, (2) which numbers in that production received text messages after any stop message, and (3) basic analysis as to the contents of the messages as pertinent to the Plaintiff's Do Not Call Registry claims. To be sure, Mr. Woolfson's expert analysis will *bear* on the TCPA claims, because his analysis will show which numbers were texted despite their numbers being on the DNC, but Mr. Woolfson will not give testimony as to the claims themselves. Under any account, doing so would impermissibly allow an expert to make legal and factual determinations properly the subject of the jury.

For the foregoing reasons, the Defendants have not shown why the Plaintiff should not be entitled to relief. The Court should grant the Plaintiff's motion.

RESPECTFULLY SUBMITTED AND DATED this February 23, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

6

We hereby certify that on February 23, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

/s/ Anthony Paronich
Anthony Paronich