IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ANANDA CAMARGO CHAVEZ,                  §
    *Plaintiff,*                              §
                                        §
v.                                      §
                                        §            Case No. 1:24-cv-504-RP
REBUILT BROKERAGE LLC d/b/a             §
REBUILT REALTY AND REBUILT              §
OFFERS LLC                              §
    *Defendants.*                             §

_____/

**<u>MOTION AND BRIEF IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION</u>**

## INTRODUCTION

This case is the touchstone of the unlawful marketing efforts Congress sought to curtail when it passed the Telephone Consumer Protection Act (TCPA) in 1991. *See, e.g.*, 137 CONG. REC. 30, 821 (1991). The TCPA created the National Do Not Call Registry (DNC), "a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659 (4th Cir. 2019). Not surprisingly then, this case is straightforward as the Defendants texted Plaintiff and other individuals without maintaining sufficient evidence of consent or records of it. Furthermore, the Defendants sent thousands of text messages to individuals who had explicitly told them to stop sending those messages – such individuals are like Ms. Chavez, who never had any relationship with the Defendants at all and informed them to stop sending messages to her before they began, by registering her number on the National Do Not Call Registry.

The Plaintiff obtained records of the text messages that the Defendants sent from their telephone service provider, MessageMedia. Defendants have admitted that they were able to open and review those records themselves, which they contend speaks for itself. But Defendants have also not advanced any evidence sufficient to demonstrate that they will be able to meet their burden of proving the *affirmative defense* of consent on a classwide basis. Plaintiff seeks to certify a class of these individuals whom Defendants texted, despite their numbers being on the National Do Not Call Registry. This class, ascertainable by the Defendants' admissions on its face through the Defendants' telephone company's own data, should be certified.

Among other enforcement mechanisms, the TCPA allows a private right of action for violations of the Do-Not-Call registry that offers many advantages for class-wide adjudication. *Krakauer*, 925 F.3d at 649, 655-56; *accord Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684

1

(7th Cir. 2013) (noting that "[c]lass certification is normal [in TCPA cases]."). So too here. Just as in *Krakauer*, common questions predominate for the proposed class. All putative class members received text messages even though they were listed on the DNC, facts which the Defendants admit can be ascertained through two sets of data: the Defendants' own texting records, and public documents in the form of the National Do Not Call Registry. Even without expert analysis, the data analysis of the calling records in this case can be streamlined to a simple data summary: compare the contents of the Defendants' texting records with those of the National Do Not Call Registry. If the Defendants texted a number on the DNC at least twice in a twelve-month period, as the Plaintiff seeking to be a class representative here, they are in the class; if not, they are not. Unlike some TCPA cases which have failed at class certification, and like those that have succeeded, Defendants' own evidence of putative consent will not require individual analysis because it is insufficient as a matter of law to constitute consent under the TCPA, and so adjudication of the consent defense can be accomplished on a classwide basis.

All class members received functionally identical text messages under the same legally deficient putative consent (or none at all), and the damages sought by Plaintiff and class members under the TCPA are set by statute. Resolving the thousands of TCPA claims present here is undoubtedly the superior method for addressing Defendants' systematic telemarketing, given the inefficiency of what might otherwise be numerous identical lawsuits, or none at all. Thus, class-wide liability is the only way to ensure that corporations such as Defendants stop systematically violating the law and compensate those who were injured.

## PROPOSED CLASS

For the reasons that follow, the Plaintiff respectfully requests that this Court certify a class, tentatively defined as follows and subject to amendment, under Fed. R. Civ. P. 23(b)(3):

All persons in the United States whose (1) telephone numbers were on the National Do Not

Call Registry for at least 31 days, (2) but who received more than one telemarketing text message from or on behalf of a Rebuilt entity, (3) within a 12-month period (4) as reflected in the data produced by MessageMedia (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

Analysis of the data produced by MessageMedia in discovery, coupled with a cross-referencing of numbers on the National Do Not Call Registry, reveals that there are 13,115 such putative class members, including at least at least 187 class members that were sent telemarketing text messages after they sent a confirmed stop request. Defendants have not made any argument refuting such data, which they admit is ascertainable from the face of the MessageMedia production, nor have Defendants hired an expert to establish their anticipated affirmative defense of consent, let alone evidence sufficient to carry their legal burden at trial.

## FACTUAL BACKGROUND

This case is straightforward and concerns telemarketing text messages sent by the Defendants directly through a text messaging platform they used called MessageMedia a/k/a ClickSend. (Exhibit A, Deposition of Albert Young "Young Dep." 21:8-12, 26:23-25, 27:1-25). The text messages promoted the Defendants' real estate services and were sent to numbers, like the Plaintiff's, listed on the National Do Not Call Registry in alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq. ("TCPA"). Defendants did not keep records of the text messages they sent. (Young Dep. 39:14-20, 46:7-19). However, MessageMedia, the provider they used, did, and was able to retrieve records of such class members who were texted from archival storage. MessageMedia's production was completed on January 22, 2025 and contains records of text messages Defendants sent dating back to January of 2023.

There is no dispute that the Defendants sent the messages. Defendants obtained the telephone numbers they texted from a single source: via submissions to a website marketplace. (Id. 51:10-22, 53:5-9). And, during all times relevant, including when Rebuilt obtained the Plaintiff's phone number, Rebuilt had no process to verify those submissions or check the

accuracy of the information submitted to the marketplace website. (Young Dep. 53:19-25, 54:1-2, 55:4-10). And, besides requiring a double-verification process for information submitted to the marketplace website, this lawsuit has not caused the Defendants to change their conduct; Defendants still use MessageMedia. (*Id.* 36:19-21, 37:23-25, 38:1-11). Also, in violation of the TCPA, Defendants do not and did not have written policies regarding the TCPA. (*Id.* 32:21-23). Moreover, Defendants did not review the MessageMedia platform for responses opting out of receiving text messages, such as a "stop" message. (*Id.* 47:5-13, 48:4-6).

The only dispute that Defendants will likely point to as a reason for defeating class certification will likely revolve around purported consent to contact putative class members. To that end, the only evidence of consent Defendants have been able to come up with are several spreadsheets produced subject to a protective order, bates numbered RBL 4286 through RBL 4305.[1] Each of these spreadsheets contains a telephone number, and varying degrees of information, including individuals' names, email addresses, secondary telephone numbers, and similar information. Absent from these documents are any indication where such information was obtained from, with the only indication, developed through deposition testimony, was that they were presumably obtained from a website. (Young Dep. 51:10-22, 53:5-9).

## RELEVANT LAW

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that Americans were "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, §§ 2(5)–(6) (1991) (codified at 47 U.S.C. § 227). Perhaps the most well-known aspect of

---

[1] Because they were subject to a protective order, Plaintiff is not attaching these documents to the motion but will provide them under seal upon request from the Court under LR CV-5.2.

4

the TCPA was the creation of the Do-Not-Call Registry (DNC Registry) to provide a safe haven from unwanted marketing calls. By adding a telephone number to the Registry, consumers indicate they don't want telemarketing calls. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and its implementing regulations prohibit calling residential telephone subscribers on the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.").

The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the [TCPA] regulations." 47 U.S.C. § 227(c)(5). As the Fourth Circuit recognized in *Krakauer*, the TCPA's "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to "make TCPA claims amenable to class action resolution." 925 F.3d at 663.

## ARGUMENT
### A. This case satisfies the Fifth Circuit's implied ascertainability requirement.

Like other circuits, the Fifth Circuit imposes a requirement that the class sought must be clearly ascertainable. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012). "However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015).

This case more than satisfies this modest requirement because not only is the class

ascertainable, *the class has already been ascertained*, and such class ascertainment can be

adequately developed and proven through a summary of admissible evidence at trial, even if this

Court declines to permit Plaintiff to designate Mr. Woolfson as an expert.[2] This is so because the

putative class here is based on two sets of admissible evidence and data that the Defendants have

already *admitted speaks for itself*, in the Defendants' response to the Plaintiff's motion: the

Defendants' texting records, as produced by MessageMedia, and a copy of the National Do Not

Call Registry. To this point, Defendants contend that expert analysis of the records of the calls

they placed is not "truly necessary" because the documents speak for themselves: "These files

can be opened in Excel, Word, Notepad, and other generic text and spreadsheet editors with

minimal or no issues." (Defs'. Opp. To Motion to Designate, ECF No. 30 ¶ 12, 14). Moreover,

counsel for the Defendants was able to "open and review the TSV files at issue without the use

of experts or any specialized software not regularly used by Defendants' counsel." (*Id.* ¶ 14).

To this end, in the event that Plaintiff's Motion to Designate Expert is denied, the

Plaintiff, and any certified class, will be able to prove their claims at trial through the use of a

summary witness under FED. R. EVID 701 and 1006, to show, in summary format, any of the

---

[2] The Plaintiff submits this Motion for Class Certification cognizant of the fact that the Court has not yet ruled on the Plaintiff's February 10, 2025 motion to designate expert out-of-time (ECF No. 29). That motion was filed because the scheduling report in this matter stated that expert designations were to be made by January 10, 2025. However, the Defendants did not maintain classwide calling records of the very text messages they placed, which necessitated a subpoena to the Defendants' text message service provider, MessageMedia. MessageMedia had to retrieve class calling data from backup storage and did not produce such data until January 22, 2025, after the deadline had passed. It was not until after MessageMedia produced the data that it became apparent that expert analysis would prove useful. Since that time, Plaintiff's proposed expert has analyzed the data in much the same way a summary witness would under Rule 1006. (ECF No. 32). If the pending motion here is granted, none of the other scheduling dates in this case would be impacted and the Court would have an independent basis to grant class certification. Cognizant of the foregoing, Mr. Woolfson's proposed expert report is attached herein as Exhibit B.

messages that were sent to individuals on the Do Not Call Registry and which are therefore in the putative class. Under Rule 1006, this court may admit at trial as evidence "a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." The crux of admissibility under Rule 1006 is whether "(1) the evidence previously admitted is voluminous, and (2) review by the jury would be inconvenient." *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001).

The MessageMedia production of the scope of the Defendants' texting conduct and campaign (of which the Defendants did not keep records), containing over ten million text messages, and the Do Not Call Registry, containing over 200 million telephone numbers, are just the exact types of documents that are admissible in summary form under Rule 1006 and which other courts in the TCPA class certification and trial contexts have appropriately considered. *See, e.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1304, 1304 n.75 (D. Nev. 2014) (certifying class based party on a declaration of counsel under Rule 1006 and holding that "[T]he Court may rely on Kristensen's counsel's Declaration [under Rule 1006], which includes a summary of the data obtained from T–Mobile."); *Andersen v. Harris & Harris, Ltd.*, No. 13-CV-867-JPS, 2014 WL 1600575, at *4 (E.D. Wis. Apr. 21, 2014) (permitting defendant to rely on calling data produced in summary form under Rule 1006). And though such review may be conducted by an expert, it is, by Defendants' admission, a rudimentary analysis conductible by anyone with a basic knowledge of databases and spreadsheets. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 385 (D. Mass. 2024) ("The data analysis techniques [and] standard software tools] she utilized are well-established, fairly unremarkable, and plainly appropriate.").

And Rule 701 permits a witness to testify about and summarize such evidence compiled from different sources, including Rule 1006, in complex cases involving the summarization of

voluminous records." *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003). In this case, such summary would be limited to the factual summarization of two sets of facts: the contents of the Defendants' calling conduct (including any messages containing stop replies), as produced by MessageMedia, and the contents of the Do Not Call Registry, as obtained from the federal government. By the Defendants' own admission, all a jury would have to do at trial is simply to determine whether the Plaintiff has met her burden of cross-referencing and summarizing the MessageMedia electronic files against numbers on the Do Not Call Registry, facts which are already in the record and otherwise admissible, the former under Rule 803(6) and the latter under Rules 902 and 1005, in order to establish plain TCPA violations.

Showing that the putative class can be "adequately defined" and will be "clearly ascertainable" at "some stage of the proceeding" satisfies the ascertainability requirement in the Fifth Circuit. *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019). And other courts have certified similar classes in TCPA cases under even more stringent ascertainability tests in other circuits when using the defendant's own records to establish ascertainability. *E.g.*, *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992, at *24 (W.D. Tex. Mar. 25, 2022) ("[T]he Court is satisfied that the proposed classes are ascertainable from the records maintained in Defendants' ordinary course of business.").

Based on the data[3] produced in discovery, which Defendants admit speaks for itself and no expert analysis is truly necessary (ECF No. 30 ¶ 12), when cross-referenced with the Do Not Call Registry, Defendants sent 1,937,663 text messages within 365 days of each other to 13,115 unique telephone numbers that had been on the National Do Not Call Registry, including the

---

[3] Mr. Woolfson's analysis confirms these numbers, readily apparent on the face of the data produced. Woolfson Report ¶50, 41.

Plaintiff, as well as 187 numbers who revoked any purported consent.

**B.  This case satisfies the requirements of Rule 23(a).**

A plaintiff seeking class certification must demonstrate he has satisfied the four threshold requirements of Rule 23(a). *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020). In addition, a plaintiff must satisfy one of the three parts of Rule 23(b). *Id.* This case satisfies these requirements because numerosity, commonality, typicality, and adequacy are met.

The Court's inquiry at the class certification stage centers upon whether Plaintiff has demonstrated that she met the requirements of Rule 23, not whether Plaintiff will ultimately prevail on the merits. *See Amgen v. Connecticut Ret. Plans*, 568 U.S. 455, 465-66 (2013). Few actions are as appropriate for class treatment as this one, as the Plaintiff asserts uniform claims on behalf of more than 13,115 persons whom Defendants called, despite their numbers being on the DNC, and 187 persons who told the Defendant to "stop" texting. This Court should certify this class action because Plaintiff's claims involve a core, common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

1.  The numerosity requirement of Rule 23(a)(1) is satisfied because calling records identify 13,115 unique class members.

The numerosity requirement is easily satisfied here. For a proposed class to pass muster under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fᴇᴅ. R. Cɪᴠ. P. 23(a)(1). And impracticability does not equate to impossibility; the Rule merely requires that, in the absence of a class action, joinder is simply infeasible. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). This is presumptively the case when the class members exceed about forty or so, especially when the class, a nationwide class here, is geographically dispersed. *Id.* Here, the class calling data itself, on face,

reveals that Defendants sent several million text messages to several tens of thousands of unique

telephone numbers, which, cross-referenced with the Do Not Call Registry, number thousands of

people at minimum, including hundreds of individuals the data makes clear received messages

after texting "stop."[4] It would be impractical to join all those persons to assert such relatively

insignificant claims. For these reasons, this case satisfies the numerosity requirement.

> 2.  The commonality requirement of Rule 23(a)(2) is satisfied because all class members
> suffered the same injury–illegal telemarketing–and have common contentions–that
> <u>Defendants' calls to their DNC numbers violated the law.</u>

The commonality requirement dictates that the case have "questions of law or fact

common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low

and does not require that all class members have perfect identify of questions of law or fact.

Indeed, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359. The Plaintiff must

only demonstrate that there is a common question central to the validity of the class's claims, the

"truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at

350. For the reasons below, this case satisfies the requirement.

Commonality is satisfied here because the Class all suffered a common injury in

Defendants calling their respective telephone numbers. *Wal-Mart*, 564 U.S. at 349. The Class's

claims depend on a common question capable of classwide resolution: whether the Defendants'

conduct of texting numbers on the do not call registry, without legally sufficient consent,

constitutes a violation of the TCPA. Predictably, Defendants will likely contend that they

obtained consent to contact each class member. But it was Defendants' burden to raise the

affirmative defense of consent by adducing *legally sufficient* evidence thereof. Defendants did

not, meaning that determination of the consent issue will be common to all class members.

---

[4] Mr. Woolfson's analysis shows numbers in the same range. Woolfson Report ¶50, 41.

Given that Defendants have no evidence of consent, the Defendants will likely try to shift the conversation to argue that individualized issues of consent will defeat class certification here. *Cf. Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008). But that argument is a red herring: if the Court concludes that the evidence developed in discovery may not be legally sufficient consent under the TCPA, it can nevertheless hold that commonality exists because the class is advancing a uniform *legal* claim: that consent is deficient. Of course, which *way* that legal claim should be decided is not a question for this Court to decide at class certification. Rather, it is whether that legal claim is *uniform* for all class members and susceptible to the same factual proofs, such that a common answer to that legal claim will advance the conclusion of the litigation by definitive resolution of the consent question. *See, e.g.*, *Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024) (certifying class on common legal issues of consent).

All class members share at least two common legal and factual questions: whether the Defendants' conduct in texting their numbers on the Do Not Call Registry violated the TCPA, and whether the Defendants have legally met their burden of demonstrating the affirmative defense of consent. Further, the uniformity of the applicable law — the TCPA — makes resolution of these questions on a class-wide basis viable. Whether or not Defendants are liable for the alleged violations of the DNC provisions of the TCPA is a legal question that can be resolved on behalf of the entire class via common proof.

3.   The typicality requirement of Rule 23(a)(3) is satisfied because all class members received nearly identical text messages from the Defendants.

Much of the commonality analysis applies to typicality because both elements "tend to merge." *Wal-Mart*, 564 U.S. at 350 n.5. The burden for demonstrating typicality is quite low and merely requires that the class members share the same or similar injury, that the injury is not

11

unique to the plaintiff, and that the defendant possesses no defenses uniquely applicable to the plaintiff. *Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999). Typicality does *not* require that the Plaintiff's claims be identical to other class members. "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Plaintiff, and all class members, received calls from Defendants. Plaintiff, and all class members, have numbers on the Do Not Call Registry. And, although the Defendants have claimed that they possessed consent to contact the Plaintiff and other class members, the legal issues underpinning that consent are susceptible to identical legal analysis and attack, as will be explained in greater detail below, because the Defendants' course of conduct relies on the same inadequate factual circumstances and source of consent. This identical conduct gives rise to the Class's claims. Every class member has the same claims, so by Plaintiff proving her claims, she will prove the class claims. *See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (certifying a TCPA case and finding that "[t]he 'typicality' requirement is met as the legal theory for each class member is based on the same facts and legal theory as [plaintiff]"). No individualized inquiry is required.

Indeed, courts routinely certify as typical TCPA cases where, like here, the same circumstances caused the calls at issue. *See, e.g.*, *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015). Courts also do not see consent issues as destroying typicality, particularly when, as here, the purported customer denies having consented and where there are uniform issues with the offered consent evidence. *Aley*, 2024 WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024), *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio*

12

*Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012).

Defendants conducted all of their texting operations in-house. And although the Defendants themselves did not personally maintain records of the messages they sent, MessageMedia did, dating back to approximately 2023. MessageMedia has produced complete, detailed records of these texting operations, including the message content, date sent, number sent, and whether the message was delivered. Defendants did not use potentially disparately liable entities or third parties to place the calls. The fact that all the messages were sent from a centralized location, using centralized messages drafted by the Defendants and common business practices, further establishes typicality.

4.   The adequacy requirement of Rule 23(a)(4) is satisfied because Ms. Chavez is an <u>ideal TCPA class representative and TCPA-experienced counsel represents her.</u>

The adequacy requirement necessitates a two-part analysis. First, the Plaintiff must demonstrate that she can represent the class "fairly and adequately" and protect its interests. Fed. R. Civ. P. 23(a)(4). Additionally, the Plaintiff must also demonstrate that her chosen counsel will do the same. With respect to both herself and counsel, Plaintiff must demonstrate zealousness, competence, and a willingness to protect the interests of other class members. *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017). Additionally, the Plaintiff must also demonstrate that neither she nor counsel have a conflict of interest between herself and class members. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Plaintiff is your typical adequate class representative. She is an ordinary consumer who is fed up with the calls at issue. And although she has no formal legal training or experience, she is familiar with the nature of the litigation, the claims at issue, and what is required of her as a class representative. *See* <u>Exhibit C</u>, Declaration of Ananda Chavez. There is no doubt that Ms. Chavez can and will adequately represent this class.

13

In addition to representing Ms. Chavez in this matter, Mr. Paronich also represented the class in *Krakauer v. Dish Network*, in which the Middle District of North Carolina awarded the Class a record-setting $63 million judgment and commented extensively about Mr. Paronich's experience. No. 1:14-CV-333, 2018 WL 6305785, at *3 (M.D.N.C. Dec. 3, 2018) *aff'd,* 925 F.3d. 643 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019). Courts have also appointed Mr. Paronich to multi-district TCPA litigation and numerous other TCPA class action lawsuits. (Exhibit D, Declaration of Anthony Paronich). Similarly, Mr. Perrong also represented the certified class, including on an unsuccessful interlocutory appeal taken by the defendant, in *Aley*, 2024 WL 4007345; No. 24-2539, (2d Cir. Jan. 8, 2025) (denying interlocutory review).

### C. <u>This case satisfies the requirements of Rule 23(b).</u>

In addition to satisfying the requirements of Rule 23(a), the Plaintiff must also demonstrate that she has satisfied the requirements of one of the three subsections of Rule 23(b). Here, class certification is appropriate under Rule 23(b)(3) because common questions of law or fact "predomin[ate]" and because the class action mechanism is "superior."

> 1. Both common legal and factual questions predominate over the litigation because there is uniform proof for uniform calling conduct, and uniform evidence of legal challenges to <u>consent applicable to the entire Class, satisfying the first part of Rule 23(b)(3).</u>

This simple, straightforward case is the touchstone for satisfying the predominance requirement because the "proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. The purpose of the predominance requirement is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Mullen*, 186 F.3d at 630 (quoting *Amchem*, 521 U.S. at 615).

The predominance requirement requires the plaintiff to show that the elements of the underlying cause of action are subject to classwide proof arising from common conduct. In other words, predominance is a more stringent outgrowth of the commonality and typicality requirements of Rule 23(a). Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through "generalized proof," and if these particular issues are more substantial than the issues "subject only to individualized proof." *Cruson*, 954 F.3d 240, 254 n.12 (5th Cir. 2020). Here, the common, "aggregation-enabling issues in the case," such as the lists of persons called, whether they were on the DNC, and whether the TCPA's other statutory prerequisites are satisfied, are more prevalent than "non-common aggregation-defeating individual issues," such as unique consent defenses the Defendants could potentially have with respect to some of their calling. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Because of the "many advantages for class-wide adjudication" inherent in the TCPA, "[t]he problems that so often plague class actions under Rule 23(b)(3) are wholly absent from" TCPA litigation. *Krakauer*, 925 F.3d at 655. "The liability determinations involve no questions of individual reliance, no complicated contractual obligations, and no theories of probabilistic injury. The damages calculations do not turn on individual evidence, nor are they difficult to connect to the underlying harm. Put simply, a plaintiff suing under [the TCPA] is likely to be in the same position as a great many other people and can largely rely on common proof to make out his claim." *Id.*

As noted above, Plaintiff anticipates that the vast majority of the argument and analysis into any potential consent defense in this case will focus on the legal sufficiency of any language that was presented to a website visitor, a question that lends itself to classwide proof.

Precisely that sort of "common proof" will go to the claims of Ms. Chavez and those of the proposed class members.[5] Ms. Chavez will demonstrate using common proof why none of the consent records (a) are admissible, (b) satisfy the TCPA, or (c) comply with the E-Sign prerequisites for prior express written consent in writing, each of which would independently support defeating Defendants' consent defense using common evidence. And even *if* this Court were to hold that individualized consent issues predominated, there are still 187 other class members who received messages without any consent at all because they revoked it.

Defendants' only evidence of consent are the proffered spreadsheets of customers who submitted information to the website, but offer no other evidence surrounding such signups, rendering the spreadsheets inadmissible. Defendants' failure advance admissible evidence in support of consent is fatal to their affirmative defense of consent as to all class members. The court's denial of *summary judgment* in *Hossfeld v. Allstate Insurance Co.* is factually on all fours with the case here and demonstrates why the Defendants' proffered consent evidence is inadmissible hearsay. There, the defendant, as the Defendants here, produced a spreadsheet reflecting purported leads it obtained from a website. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 872 (N.D. Ill. 2024). The spreadsheet at issue reflected the plaintiff's phone number, but a name, email address, and mailing address associated with a different person. *Id.* This is analogous to the subject spreadsheet here, which contains the Plaintiff's phone number, but

---

[5] In its 2020 decision *Hirsch v. UsHealth Advisors, LLC*, the Northern District of Texas denied class certification in a TCPA matter on commonality, typicality, and predominance grounds sounding in consent. 337 F.R.D. 118. *Hirsch* concerned calls that were placed with disputed consent as to each class member, and the court held that the "many forms" of consent applicable there provided "no way to establish consent on a classwide basis" because there was evidence that consent originated from "multiple sources," including some that met the TCPAs requirement and thus "def[ied] generalized proof." *Id.* at 130. No such concerns are present here, where any consent analysis will turn on scrutiny of the singular set of spreadsheets the Defendants rely on for consent and the circumstances surrounding their creation.

nothing else accurate about the Plaintiff. Moreover, the spreadsheet in that case contained no further information or details regarding how the submission was made to the website or factual circumstances surrounding its creation. *Id.* Accordingly, the court held that the spreadsheet was inadmissible hearsay and refused to consider it at summary judgment, concluding that "Allstate has not laid an evidentiary predicate tracing the hearsay statements in the spreadsheet to their source, *i.e.*, the data and statements that underly them." *Id.* at 873 (citing cases) (cleaned up).

Similarly, the Plaintiff would also be able to prove that the consent is legally deficient because it did not comply with the requirements of the Federal E-SIGN Act, 15 U.S.C. § 7001(c), demonstrating predominance. TCPA consent must comply with the requirements under the E-SIGN Act to be valid. *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021). Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained otherwise is a legal nullity because it is unsigned. *Id.* The record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements, including outlining hardware or software requirements for access to and retention of electronic records, obtaining consent to sign and receive documents electronically, a "statement" informing customers of the procedures for granting or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. 15 U.S.C. § 7001(c), (c)(1). And at least two courts have held at summary judgment and class certification that failure to comply with the E-SIGN Act is fatal to obtaining TCPA consent. *Mantha*, 2021 WL 6061919, at *8; *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024).

Defendants will likely counter that individualized claims of lack of consent defeat predominance. Not so. Although it is certainly true that Ms. Chavez denies ever having visited

17

the Defendants' website, a contention that is bolstered by the fact that the records Defendants possess of her phone number contain none of her information, her contentions do not require an individualized inquiry. The effectiveness of the consent in this case must also examine any website through which the Defendants contend consent was obtained, as well as the circumstances surrounding those visits. Accordingly, uniform issues with the legal sufficiency of the affirmative defense of consent will predominate over individualized ones. Plaintiff's counsels' victory in *Lightfire* explains why this is the case:

> The sufficiency of the consent procedures used on Myjobscorner.com under the TCPA is an issue for every Proposed Class Member. Should the Court grant certification, and should the Court subsequently rule that the consent procedures were inadequate under the law, such a determination would render moot the individualized assessment of whether individual Proposed Class Members visited Myjobscorner.com. This dynamic incentivizes Proposed Class Members to prioritize the issue of Myjobscorner.com's procedures. Therefore, the shared issue of whether Myjobscorner.com adequately obtained consent is "more substantial" than the individualized inquiries as to whether Proposed Class Members visited the website.

*Aley*, 2024 WL 4007345, at *5.

Of course, issues of consent have not yet been argued in this case and are more appropriate to a jury trial. Nevertheless, the Plaintiff here previews for the Court how such arguments are suitable for classwide resolution, just as they were in *Lightfire*, *Hossfeld*, *Mantha*, and *Bradley*, among others. *See also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (holding predominance was satisfied when consent hinged on a legal question); *Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298, at *7 (N.D. Ind. Dec. 9, 2016) (holding that predominance was satisfied when consent was obtained in a uniform, common manner). In order to avail itself of potential affirmative defenses available to it, Defendants will need to meet their *affirmative* burden of demonstrating that class members provided their prior express consent, signed and in writing, to receive messages. They will not.

But even *if* the court accepts into evidence the spreadsheets and finds, at trial, that they

constitute legally sufficient consent, a smaller class remains of 187 individuals, plus the Plaintiff here, that the Defendants unquestionably did not have consent to contact. It is true that the Plaintiff did not herself text "stop," but this is of no moment. Like those who did text "stop" and continued to receive texts without consent, the Defendants likewise texted the Plaintiff in the absence of consent. The Plaintiff did not consent, a fact confirmed by the Plaintiff and the Defendants' own records showing the only accurate information they have on the Plaintiff here is her phone number. The Plaintiff and the subset of individuals who texted stop therefore have an identical legal claim: the *absence* of consent. It was an identical set of circumstances under which the Court certified a class in *Mantha v. QuoteWizard.com, LLC*. There, the defendant's calling records were analyzed to identify text messages where an individual requested the messages cease, creating a class list of "opt out" individuals. 347 F.R.D. 376, 385 (D. Mass. 2024). Because the plaintiff "did not send such a text," the defendants argued that plaintiff was not representative of the rest of the list, who had opted out. The Court disagreed, reasoning that he "falls within the proposed Class Definition and, as explained below, qualifies as a proper representative party." *Id.* at 387. It went on to explain that this argument, which Defendants are expected to raise, "conflates the proposed Class Definition with the methodology used to narrow the Class List. . . . Though his number was not in QuoteWizard's DNC files, that is because he expressed his desire for the texts to cease by suing, rather than texting back." *Id.* at 394 (cleaned up). So too here, where Ms. Chavez expressed her desire for the texts to cease by suing.

It is readily apparent that common issues related to the Plaintiff's burden of proof overwhelmingly predominate and these issues are subject to common legal and factual proof. Whether Defendants contacted the Plaintiff and other class members who listed their numbers on the DNC Registry is subject to common proof in the form of the calling records. Whether the

other statutory prerequisites to this claim, such as the one that the "individual receive more than one telephone call within any 12-month period," are likewise proved by those same calling records. 47 U.S.C. § 227(c)(5). This Court need not conduct individualized damage assessments because all class members are seeking the same measure of statutory damages. Courts routinely certify TCPA class actions just as this one. *E.g.*, *Krakauer*, 925 F.3d at 658.

      2.  <u>A class action is the "superior" method of adjudicating claims under the TCPA.</u>

      The four factors of the superiority requirement set forth in Rule 23(b)(3), which requires that the class action mechanism be "superior" to other available methods to adjudicate the controversy, are also satisfied. The guiding policy behind the class action mechanism is to overcome problems posed by the miniscule incentive that small recoveries pose. *Amchem*, 521 U.S. at 616. TCPA cases are the touchstone of satisfying superiority, as few members of the class would have an interest in bringing individual claims, there are no other actions against Defendants alleging TCPA violations, class treatment will conserve judicial resources, and is easily manageable, especially with such straightforward claims. The class action mechanism effectuates the important social and cultural goals underlying the TCPA. The Fourth Circuit observed that "the advantages of class resolution follow directly from the statute," which "creates a simple scheme" for resolving the problem of "repeated and unwanted telemarketing calls." *Krakauer*, 925 F.3d at 659, 663. Congress prescribed strong medicine for a serious disease. This resounding endorsement of TCPA class actions leaves no room for doubt as to the fact that this case must be certified and that the class action mechanism is superior.

## CONCLUSION

      Because the Plaintiff has satisfied Rule 23's admittedly deferential requirements, Plaintiff respectfully requests that this Court (1) certify the proposed Class, (2) appoint Ms. Chavez to serve as the Class Representative, and (3) appoint the undersigned as Class Counsel.

RESPECTFULLY SUBMITTED AND DATED this March 20, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com


*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF CONFERENCE

We hereby certify that we conferred with counsel for Defendants, regarding the subject of this motion, which is opposed. The parties exchanged a meet and confer email regarding the subject of the motion, which included a telephone call on March 20, 2025 attended by Andrew Perrong for Plaintiff and Jacob Bach for the Defendants. An agreement could not be reached because the parties are at an impasse with respect to the subject matter of the motion.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*/s/ Anthony Paronich*
Anthony Paronich

**CERTIFICATE OF SERVICE**

We hereby certify that on March 20, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

/s/ Anthony Paronich
Anthony Paronich