IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ANANDA CAMARGO CHAVEZ, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 1:24-cv-504-RP |
| REBUILT BROKERAGE LLC d/b/a | § | |
| REBUILT REALTY AND REBUILT | § | |
| OFFERS LLC | § | |
| *Defendants.* | § | |

______________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Defendants' opposition to the Plaintiff's Motion for Class Certification seizes on purported issues of consent in this case. That argument should fail to carry the day for three reasons. *First*, Defendants lack any consent to contact the Plaintiff and at least 187 other class members who opted out but still received texts from the Defendants, allowing the Court to certify a class of at least that size. *Second*, with regard to the 12,928 remaining class members for which the Defendants possess *purported* evidence of "consent," that consent is legally deficient and will not even be admissible. *Third*, even if the Defendants' singular source of consent evidence was admissible, it is still capable of classwide evaluation and proof, rendering class certification appropriate. Defendants' remaining arguments also fail. The Class must be certified.

## ARGUMENT

### A. Plaintiff and at least 187 other class members were unquestionably sent text messages without any consent at all. Consent is therefore a non-issue for these class members, who all have Article III standing.

In order to be a member of the class Plaintiff proposes, an individual must have registered their number on the Do Not Call Registry for at least 31 days, received more than one text message from a Rebuilt entity in a twelve-month period, as reflected in the data produced by MessageMedia, in the period that begins for years before the filing of the complaint to trial. If an individual is a member of this class, they will also have demonstrated a violation of 47 U.S.C. § 227(c)(5), as they received more than one telephone call in a twelve-month period by or on behalf of the same entity in violation of the TCPA. The relevant regulation here, 47 C.F.R. § 64.1200(c)(2), prohibits making a call to a subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

Once the plaintiff has demonstrated a violation of the TCPA, the burden then shifts to the defendant of establishing an affirmative defense to its conduct. The affirmative defense on which

the Defendants will claim to rely is that of consent. But, with respect to both the Plaintiff, who did not consent, and 187 other class members who took the extra step to *opt-out* and *revoke* any putative consent, and thus did not consent, the Defendants will not be able to meet their burden of proving consent *because none exists*, either because, in the case of Plaintiff, consent did not exist as an initial matter or because, as in the case of 187 other class members, those class members *revoked* any purported consent (if any can be said to exist at all) by opting out.

Defendants take issue with the Plaintiff standing as a class representative for 187 class members who opted out, given that the Plaintiff did not affirmatively opt out like those 187 other class members. However, that is no matter, because the Plaintiff is simply selecting 187 class members, and herself, to demonstrate that, with particular respect to *those* class members, there can be *absolutely no evidence of consent* that the Defendants can rely upon, as opposed to the remaining 12,928 class members, for which Defendants claim to have *purported* consent (a point addressed below, as that "consent" is a nullity because of its uniform legal deficiencies). Defendants did not have consent to contact the Plaintiff because their purported consent record for Plaintiff, by their own admission, names another individual entirely, which is not consent naming the Plaintiff. Defendants also did not have any consent whatsoever to contact the 187 other class members who opted out and then sent them text messages months after they opted out and revoked any purported consent that may have existed, and in so doing also manifested their desire not to receive such calls. This is exactly the same situation under which the Court certified the class in *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 386-87 (D. Mass. 2024):

> QuoteWizard alleges that Verkhovskaya's testimony should be rejected because her process failed to identify Mantha, whom she manually added to the Class List. . . . Verkhovskaya has not represented that her methodology identifies <u>everyone</u> from the files obtained from QuoteWizard who could <u>possibly</u> fit within the proposed Class Definition. Rather, she offers her data analysis as a means of identifying a <u>subset</u> of all possible class members for certification as a class. . . . A simple example illustrates the

> point. In Step 3(b), Verkhovskaya removed all numbers from the proposed Class List except those appearing on the Drips [Do Not Call] list. . . Of course, Mantha did not send such a [STOP] text. He nevertheless falls within the proposed Class Definition and, as explained below, qualifies as a proper representative party. . . . Mantha fits within the proposed Class Definition because (a) his telephone number was listed on the NDNCR, (b) he received more than one telemarketing text within a twelve-month period from Drips, (c) to promote the sale of QuoteWizard's goods or services, and (d) his number is on the Class List. It is irrelevant, for typicality purposes, that he was added to the Class List manually if he otherwise satisfies the Class Definition.

In *Mantha*, the defendant's calling records were analyzed to create a class list of "opt out" individuals. *Id.* Because the plaintiff "did not send such a text," defendants argued that plaintiff was atypical of the other members, who had opted out. Court went on to explain that the argument Defendants here raise, "conflates the proposed Class Definition with the methodology used to narrow the Class List." *Id.* at 394 (cleaned up). As such, no individualized "minitrials" on the consent issue are necessary for either the Plaintiff or the 187 class members who opted out because Defendants simply *do not have a scintilla of evidence* to meet their affirmative burden of showing consent as to *those* class members. Therefore, even *if* this Court were to find that the issues of consent proffered by the Defendants necessitated individualized minitrials, no minitrials are necessary when the Defendants *have no evidence of consent to contact certain class members*, as demonstrated though the Defendants' telephone company's own books and records.

Relatedly, Defendants point out that the Plaintiff did not opt out and is therefore not like the 187 class members who did. That is no matter, as the Plaintiff cannot revoke non-existent consent as an initial matter. But even more importantly, the Plaintiff is a class member, like the other class members, who meet the criteria set forth in the Plaintiff's class definition, and thus can represent all 13,115 class members, including the 187 who opted out, and the 12,928 for whom Defendants have uniformly legally and factually deficient evidence of consent, which is a nullity. Plaintiff readily admits that she could not stand as a representative for a class of optout members *if that class was asserting a TCPA revocation claim*. But the Plaintiff is not asserting a

TCPA *revocation* claim, she is asserting a *do not call* claim. To be sure, the 187 class members *also* have a claim under 47 C.F.R. § 64.1200(d)(3) for Defendants' failure to record their do not call requests and thus have a TCPA *revocation* claim under that subsection. But the Plaintiff's class definition asserts the *same registry claim they all have*. "[Defendant] conflates the proposed Class Definition with the methodology used to narrow the Class List. Nor is [Plaintiff] 'atypical.' Though [her] number was not in [Defendant's] DNC files, that is because she expressed his desire for the texts to cease by suing, rather than texting back." *Mantha*, 347 F.R.D. at 394.

In this regard, Defendants commit a critical error, conflating Plaintiff's standing to represent class members asserting a common *claim*, founded in same legal theory with a similar course of conduct and common questions, with the uniformity of the evidence and factual circumstances surrounding the claim and the *proofs* used to narrow and address issues in the resultant class list. *Id.* ("[T]ypicality [is] satisfied if class representative's injuries arose from 'same events or course of conduct' and his claims are 'based on the same legal theory.'"). It is well-established in the class action context generally and the TCPA class action context specifically that factual differences as to proof of class members' claims do not preclude class certification, so long as those factual differences are either immaterial to the claims' elements or otherwise susceptible to categories of generalized proof. *E.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491–92 (N.D. Ill. 2015) (emphasis added):

> Kolinek's claim that Walgreens violated the TCPA when it placed a prerecorded prescription reminder call to his cellular phone satisfies Rule 23(a)'s typicality requirement because the class consists of all persons who received such calls. *The number of times other class members received prescription reminder calls is immaterial to the question whether those claims arise from the same course of conduct and share a common legal theory*.

*See also Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 584–85 (N.D. Ill. 2018) ("[plaintiff] shares claims that are typical to each proposed class member because she received a call from Quality

to her cell phone marketing a Sempris product, like the other proposed class members."); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1142 (W.D. Mo. 2020). Indeed, as this Court's sister in the Northern District observed, "the TCPA does not contemplate a content-based restriction on actionable calls—it prohibits *all* calls sending prerecorded messages to certain individuals without consent, *regardless of the content of the messages*." *Starling v. KeyCity Cap., LLC*, No. 3:21-CV-818-S, 2022 WL 198403, at *5 (N.D. Tex. Jan. 21, 2022) (emphasis added).

In other words, the Plaintiff is not pleading a revocation of consent subclass or an entirely different legal claim that hinges on the question of whether a class member revoked their consent or not. Although the sets of common proofs that show the Defendants did not possess consent to contact the Plaintiff, 187 other class members, and 12,928 common class members are *slightly* different, all those common proofs are demonstrable on a classwide basis and apply to *all* class members to arrive at the same conclusion: the Defendants did not possess *any* legally sufficient consent (rendering it a nullity), or no consent at all. Merely having claims that may require some individualized or grouped analysis is not fatal to commonality, because all class members were harmed in the same way: by receiving messages to their numbers on the Do Not Call Registry. *See U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 783 (N.D. Tex. 2022) ("Even though their personal circumstances may factually differ in small ways, the threat is the same—get the jab or lose your job.").

The Plaintiff is simply pointing out that, with respect to herself and 187 other class members, *who are by definition members of the class sought to be certified*, that the Defendants demonstrably have *no consent* whatsoever to contact these individuals, and thus no issues of consent, or even consent evidence at all, necessitating mini-trials, since it is axiomatic that trials require proof. Without proof of consent or any evidence as to Plaintiff and the 187 opt out class

members, there is no proof for the Defendants to present and no trial, let alone minitrial, to be had as to Plaintiff and *those* members. The Plaintiff uses that objective criteria to further separate the class list and demonstrate the absence of *any* consent as to those class members, as in *Mantha*, not attempting to assert additional claims based on the opt-out.

What's more, such individuals have also suffered a legally demonstrable and cognizable injury for Article III standing purposes. Both Plaintiff and the 187 class members who asked for the messages to stop are unique in that they have all affirmatively shown they *did not want the calls*, irrespective of whatever "consent" records Defendants had, and were therefore harmed. In the Plaintiff's case, she has proven and demonstrated through this lawsuit that she did not want the calls and was harmed; in the case of the opt-out class members, they expressed a desire not to receive the messages by texting Rebuilt but continued to receive messages anyway. *Mantha*, 347 F.R.D. at 394 (D. Mass. 2024) ("Though his number was not in QuoteWizard's DNC files, that is because he expressed his desire for the texts to cease by suing, rather than texting back."). Even after *TransUnion*, the receipt of unwanted messages, including by people who requested they stop, is sufficient for Article III standing purposes. *Dickson v. Direct Energy, LP*, 69 F.4th 338, 344 (6th Cir. 2023) (reasoning that do not call claims are sufficient to establish standing because the intrusion caused by unwanted communications is closely related to common law intrusion); *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023) ("intangible harms can satisfy Article III's concreteness requirement"); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022).

The Plaintiff and the subset of individuals who texted stop therefore have identical claims: the *absence* of consent. This Court should follow the lead of the District of Massachusetts in *Mantha*. Although Plaintiff contends that Defendants' consent is insufficient and a legal nullity for all class members, there can be no doubt the Court should certify the

proposed class and permit the Plaintiff to establish those facts at trial, including for the 187 class members who *opted-out*, and therefore which Defendants had no consent to continue to contact as an initial matter, just as with Plaintiff, who herself also did not consent.

**B. Consent is not an issue for any other class member; all have Article III standing.**

Having established that there are 187 class members, plus Plaintiff, for which Defendants have *absolutely no evidence of consent*, the Plaintiff now addresses Defendants' claims that they possess purported consent for 12,928 other class members. But Defendants' opportunity to develop evidence showing consent for each class member was during discovery. Defendants did not do so. All Defendants adduced was a hearsay spreadsheet of telephone numbers they contended were submitted to their website. Defendants produced no evidence that the website visits occurred, produced no evidence of the language used on the websites, or demonstrated any compliance with the ESIGN Act or any of the TCPA's other requirements for obtaining prior express written consent, despite being asked to provide this evidence in discovery. As its declaration makes clear, Rebuilt did not maintain records or backups of the websites used to obtain consent, nor does its hearsay recollection of what was contained on them meet the TCPA or ESIGN act's requirements, facts which will be readily ascertained at trial or possibly before.

Even so, it's not clear if the singular spreadsheet Rebuilt claims it will use to prove consent will even be admissible as evidence, particularly as it is unlikely to qualify as a business record, even if it was properly authenticated, because the spreadsheet appears to be merely accumulations of hearsay prepared for the purposes of litigation. *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980). And despite claiming to have IP address information and other records of consent, Defendants have not provided the same in discovery, including in the face of the Plaintiff's discovery requests for the same, and discovery has now closed; Defendants should be estopped from introducing additional evidence they claimed not to have in discovery at trial.

FED. R. CIV. P. 37(c); *Old Canton Rd. Apartments, Ltd. v. Topvalco, Inc.*, No. 3:20-CV-797-DPJ-FKB, 2023 WL 3830368, at *2 (S.D. Miss. June 5, 2023) (granting motion *in limine* to preclude the introduction of evidence that the adducing party failed to produce during discovery). For all their allegations regarding multiple databases containing information, including IP addresses, which pose purportedly individualized factual questions, *Defendants have not produced any such evidence or databases in discovery*. They cannot be permitted to shoehorn it in at trial.

Even so, a plaintiff is not required to prove the merits of her claim at class certification, nor is a defendant permitted to attempt to prove defenses. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). In other words, a plaintiff seeking class certification need not prove at class certification that any issue, let alone that of consent, will be answered in their favor. *Id.* There is a proper venue for that, and that is the federal jury trial that the Plaintiff has demanded and which will soon occur. All the Plaintiff need demonstrate at class certification is that *some* of the proffered evidence will be susceptible to classwide proof at trial and *predominate* over individualized proofs, nothing more. *Id.* And, in her motion for class certification, the Plaintiff has demonstrated how she plans to do so, including by attacking any purported consent data for admissibility and legal sufficiency. As noted in her original brief, courts nationwide, including after *TransUnion*, have held that sufficient to meet commonality, typicality, and predominance. *See, e.g., Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024) (certifying class on common legal issues of consent); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012). Plaintiff should be permitted to present that common evidence to a jury for a jury to decide.

Besides admissibility, one of the preeminent ways of doing so is by demonstrating a

uniform legal deficiency with the proffered consent evidence. For example, if Defendants fail to adduce any website language at all associated with a set of consent records, Defendants will not have met their burden of demonstrating that they obtained prior express written consent to make telemarketing calls. Defendants must prove that their website language met certain legal requirements to be effective; without evidence of what the website said, this is just as good as no consent evidence at all. *See Aley*, 2024 WL 4007345, at *3. Another court examined defective "opt in" language and held that such language does not constitute TCPA prior express written consent. *See Williams v. PillPack LLC*, 343 F.R.D. 201, 209 (W.D. Wash. 2022) (certifying a TCPA class, rejecting defence claim that individual issues relating to consent would predominate, and noting that consent was invalid because the TCPA disclosure relied upon did not disclose the defendant as the "seller"). Here, there is no TCPA disclosure, at all, which is relied upon, so it will be impossible for Defendants to show that the consent they obtained complied with the requirements in the regulations. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 at ¶33 (2012); 47 C.F.R. § 64.1200(f)(9).

Nor, for that matter, do courts recognize other forms of defective consent under the TCPA. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024), (denying motion for summary judgment on multiple theories showing that legally sufficient consent was not obtained). Consent which does not comply with the requirements of the Federal E-SIGN Act, 15 U.S.C. § 7001(c), is one such example. As described above, the FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). An entity may obtain electronic consent to make calls in lieu of a signed writing. If it does, that consent must comply with the E-SIGN Act's requirements. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic

signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule."). Consent obtained in accordance with the E-SIGN Act's requirements *may* be sufficient TPCA consent; consent obtained in in violation of those requirements is a *legal nullity* because it is unsigned; it is no consent at all. *Id.* It is the Defendant's burden to prove that consent met all legal requirements. *Id.* Both the *Mantha* and *Bradley* cases held that the lack of compliant language rendered the consent in those cases a legal nullity, a fact susceptible to common proof. *Mantha*, 2021 WL 6061919, at *8; *Bradley*, 2024 WL 2865075, at *7. Here, the record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements. For example, Defendants have adduced no evidence to show that any website versions indicated the hardware or software requirements for access to and retention of electronic records, nor shown any consumer was given the opportunity to provide their consent to sign and receive documents electronically. 15 U.S.C. § 7001(c)(1)(C)(i), (ii).

Applying this standard here, it is exceedingly clear that any evidence of putative consent that the Defendants adduce, in the form of a singular spreadsheet of consent data, will easily be adjudicated with respect to the remaining 12,928 non-opt-out class members at trial and will not necessitate individualized minitrials, because it will be easily defeated through uniform proof of sufficiency. Either the spreadsheet is legally sufficient evidence of consent or it is not. Legally deficient consent is no evidence of consent at all. And if the consent not legally sufficient, the introduction of such evidence may be precluded from introduction at trial as an initial matter through a motion *in limine* as inadmissible and irrelevant. Alternatively, a jury will decide whether, as a factual matter, the proffered consent in the form of a *single spreadsheet* meets the applicable legal requirements, including under the TCPA and ESIGN Act, to meet Defendants' burden of proving consent. At trial, all the Plaintiff will need to do is demonstrate a uniform

legal or factual issue with the proffered evidence, and it will be game over for the Defendants.

Nor are the problems that plagued the putative classes in *BioPay* or *Hirsch* evident here, as already addressed in the Plaintiff's original briefing. In *Hirsch v. UsHealth Advisors, LLC*, the Northern District of Texas denied class certification in a TCPA matter on commonality, typicality, and predominance grounds sounding in consent. 337 F.R.D. 118 (2020). However, the court did not deny class certification merely because consent evidence existed. Rather, the court there was faced with a class of 100,000 members, where both "Defendants and Defendants' Agents used various methods to obtain consent, including personal relationships, existing business relationships, explicit requests, and multiple lead-generation vendors." *Id.* at 130. Moreover, there, the class representative interacted with the calls and was deemed to have made a "subscriber's inquiry" that established a business relationship with the defendant. *Id.* That is very much unlike the case here, where the Plaintiff did not interact with the text messages, and any individuals who did by way of an incoming message containing anything other than stop were *excluded* from the class analysis by Plaintiff's expert. Here, the Defendants' consent evidence is limited to a *single spreadsheet* of dubious admissibility. And Defendants, by their own admission, have no evidence to carry their burden of showing that the consent language on the website was adequate because they did not keep records or backups of the language used. Whether Defendants' singular source of website consent is sufficient is the touchstone of common and typical evidence that predominates over any individualized issue, unlike in *Hirsch*.

Nor is the Fifth Circuit's decision in *Gene and Gene LLC v. BioPay LLC* as conclusive as the Defendants make out on the issue of consent. All that case stands for is that the existence of an affirmative defense like consent is not "*per se* irrelevant to the predominance inquiry," but acknowledged that consent issues would not necessarily defeat the predominance inquiry

circumstances where the "question of consent presented would not require individual evidence." 541 F.3d 318, 327 (5th Cir. 2008). Nothing about the question of consent here requires individualized evidence, such as inquiring as to whether an individual was transmitted a fax under individualized circumstances. Indeed, as our very own Fifth Circuit noted in *BioPay*, citing favorably to *Kavu v. Omnipak Corp.*, the consent evident in *Kavu* was obtained from a "single purveyor of such information" and the plaintiff was "able to propose a novel, class-wide means of establishing the lack of consent based on arguably applicable federal regulations." *Id.* at 327-328. This is exactly the circumstance presented here, where the Plaintiff proposes to apply a class-wide means of establishing the lack of consent, either because the evidence demonstrates that some recipients *opted out* of any putative consent, or because Defendants' singular source of consent evidence will be proven deficient under the regulations either at trial or in pretrial practice. "The common question in *Kavu* was thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individual consent." *Id.* at 328. That is *precisely* the question here: whether the inclusion of the subject telephone numbers in Rebuilt's database legally and sufficiently indicates that the recipients indicated their consent to receive text messages.

And this inquiry doesn't pose an Article III standing problem post-*TransUnion*, either. If Rebuilt's database does not sufficiently indicate that the recipients provided their consent, it follows that Rebuilt will not have met its burden in demonstrating that the recipients wanted the calls. *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 552 (S.D. Fla. 2021) (holding that the defendant bears the burden of proving an affirmative defense that implicates standing). It is therefore a fair, and logical, presumption that no class member wanted calls to which they didn't, and couldn't, consent, as their numbers were on the Registry, indicating a desire not to receive

messages. Even so, Plaintiff needn't prove standing of each class member at class certification, although she will be able to do so by showing that each class member indicated their desire to be free from unwanted telemarketing messages by registering their numbers on the Do Not Call Registry. Indeed, as the Eleventh Circuit has observed, in another TCPA class action:

> A plaintiff need not prove that every member of the proposed class has Article III standing prior to certification, and in some cases a court might reasonably certify a class that includes some putative members who might not have satisfied the requirements of Lujan and decide to deal with the problem later on in the proceeding, but before it awarded any relief.

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019). The only cited out-of-circuit case addressing standing in a contrary manner, *Elzen v. Advisors Ignite USA LLC*, No. 22-C-859, 2024 WL 195473, at *1 (E.D. Wis. Jan. 18, 2024), was itself vacated, distinguished by the Court in *Mantha*, and appears to run contrary to the Supreme Court's pronouncement that even a self-inflicted injury (i.e. a *wanted* call), can still support standing. Moreover, the *Elzen* decision involved "a different statutory provision, 47 U.S.C. § 227(b)(1)(A)(iii), which merely 'attaches liability to a procedural violation of the statute,'" unlike the claims here, which are defined by individuals who put their numbers on the Registry and indicated a desire to not receive calls from telemarketers who disregarded the registry or its legal requirements, including the ESIGN Act and other consent requirements designed to protect them. *Mantha*, 347 F.R.D. at 395.

And, in rejecting the notion in a TCPA class action that anyone who submitted their information to a website lacks injury because that injury was self-inflicted, "a self-inflicted injury can support standing provided that the traceability and redressability requirements are met." *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 870 (N.D. Ill. 2024) (citing *FEC v. Cruz*, 596 U.S. 289, 296 (2022)). Thus, even if a trial in this matter were to show that Defendants did not collect legally sufficient consent but also showed that class members submitted their

information, that does not deprive those class members of standing. Even if submitting information rendered the calls wanted and thus a self-inflicted injury, that's insufficient to defeat standing. As the Fifth Circuit has observed, the receipt of the unwanted call is *itself* evidence of standing. *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021). In any event, the standing inquiry is too tied to the merits to evaluate at class certification. Because the Defendants' evidence on the remaining class members is inadmissible and will be legally deficient and susceptible to classwide proof of the same, the class should likewise be certified.

**C. <u>There exist no other barriers to class certification.</u>**

Defendants proffer several other theories for why the Plaintiff cannot certify a class under Rule 23's other requirements. All of them fail. Take, for example, the contention that the Plaintiff's claims are not common to all other class members. As explained above, much of the Defendants' arguments on this point again conflate the elements of the claim themselves with how each claim is proven or disproven with respect to each subset of class members. That doesn't change the fact that all class members plead a uniform legal theory under which they contend Defendants violated the law and are members of the Class sought to be certified: they all received more than one text message to their numbers on the Do Not Call Registry. And they all received such messages in the absence of consent, either because they opted out, demonstrably never consented to begin with, or because Defendants did not obtain sufficient consent. Plaintiff adequately has established commonality.

Relatedly, the fact that the Plaintiff was a "wrong number" lead does not render the Plaintiff here atypical. Like all other class members, she was sent text messages to her phone on the Do Not Call Registry without consent. That she did not consent at all, and that some other class members revoked consent or Defendants obtained legally insufficient consent for others

does not change the factual and legal conclusion that Defendants had *no consent* to contact *any* class member. That being the case, the Plaintiff is typical, including for the reasons stated above. The Plaintiff does not assert that she "received invalid notice under the E-Sign Act," nor is that an element of any claim. What matters for the class's claim, as defined through its legal elements, is that *no class member consented*, and not the circumstances of *how* they did not consent: that issue is readily and easily proven classwide in three ways. Simply put, the legal and remedial theory is the *lack of consent*, which is common to all class members.

Defendants' claims that the Plaintiff cannot establish numerosity or adequacy are likewise easily dispensed with. *At minimum*, the class here contains 187 members, and potentially 12,928 more, depending on how the Court and jury rule as to any proffered consent evidence adduced at trial. That is well within the range that satisfies numerosity, as Defendants admit. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (holding even a class of 100 members is sufficient). Nor are the Plaintiff and her counsel inadequate. As explained above, Defendants peculiarly claim that the Plaintiff's claims are not representative of the class claims, a contention which is a bit strained as an initial matter. Defendants then go further and allege that this gives rise to a conflict of interest that defeats adequacy. Simply put, that is not an adequacy question, as adequacy is typically implicated where, for example, the named class representative and their counsel are in cahoots or some conflict of interest exists to render her interests "antagonistic" to other members, as in securities litigation where corporate shareholders are also seeking to represent the class as counsel. *E.g.*, *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). That is plainly not the case here.

## CONCLUSION

The motion for class certification should be granted.

RESPECTFULLY SUBMITTED AND DATED this May 5, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

We hereby certify that on May 5, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*/s/ Anthony Paronich*
Anthony Paronich